## 57922. PERKINS v. THE STATE.

CARLEY, Judge.

David T. Perkins was tried by a jury on October 2, 1978, on the charge of racing and contest of speed with another (Code Ann. § 68A-808 (a)), a misdemeanor. The state called just one witness, the arresting officer, who testified that he was sitting in his police car near an intersection in Cobb County when two cars pulled up side by side at the red light. The appellant Perkins was in his 1965 Mustang convertible in the outside lane and a co-defendant, David Allen, was in a 1973 Camaro in the inside lane. When the traffic light turned green, both cars started off. The lane in which Perkins was traveling terminated and he pulled in behind Allen's car. There was another stop light about three-tenths of a mile down the road and Perkins merged behind the Camaro in less than half that distance. The officer stated that both men were going over 45 miles an hour, which exceeded the speed limit, and were "laying drags," so he pulled them over and charged them with contest of speed. Both defendants denied speeding or racing and both claimed they did not know what they were charged with until they were given their citations. Neither defendant knew each other before the occurrence and the appellant had never before received a traffic citation.

The jury returned a verdict of guilty against Perkins who, enumerating 12 errors, appeals.

1. Perkins contends that the trial judge committed reversible error by placing the burden of proof upon him in her charge to the jury. The charge as given was as follows, the italicized portion being that to which objection is made:

"Jurors, to these accusations the defendants have entered their pleas of not guilty. I charge that the effect of such a plea is to place the burden of proving — the burden upon the State of proving to you beyond a reasonable doubt the guilt of the defendants in this case, and that is the issue which you have for determination by your

verdicts in this case . . .

"Jurors, the defendants enter into the trial of this case with the presumption of innocence in their favor, and that presumption remains with them throughout the trial unless and until it is overcome to your satisfaction beyond a reasonable doubt.

"I charge you that the burden is on the State to prove each and every allegation set out in the accusation, and that the State must carry this burden to your satisfaction beyond a reasonable doubt. . .

"I further charge you that when the guilt of the accused is made to appear beyond a reasonable doubt to the satisfaction of the jury, you are authorized to convict regardless of good character. Such evidence is to be weighed and considered by you, the jury, in connection with all the other evidence presented in this case . . .

"Jurors, the burden of proof in this criminal case rests upon the prosecution, and it remains there throughout the trial. This proof must satisfy you, the jury, of the defendants' guilt beyond a reasonable doubt; whereas in civil actions it is sufficient to prove the issues involved in those cases by what is known as a preponderance of the evidence. *However, I charge you that if in a criminal prosecution it becomes necessary for the defendant to explain some fact or justify certain conduct, he does not have to do so beyond a reasonable doubt.*" (Emphasis supplied.)

This issue is controlled by the rule enunciated by the Supreme Court in *State v. Moore,* 237 Ga. 269, 270 (1) (227 SE2d 241) (1976), that after the final date of that decision "charges which place any burden of persuasion upon the defendant in criminal cases shall not be given and such charges will be deemed erroneous and subject to reversal, absent harmless error and invited error." Even where the defendant raises one of the affirmative defenses defined in Criminal Code Ch. 26-9 (i.e., justification, self-defense, entrapment, etc.), the burden of proof still rests entirely upon the state as it does with all other issues in the case. *State v. Moore,* 237 Ga. 269, supra.

Here Perkins did not raise an affirmative defense — he simply denied committing the crime. But because the judge defined the burden of proof in civil cases as preponderance of the evidence immediately before stating

that the defendant need not explain or justify his conduct beyond a reasonable doubt, the implications of the instructions objected to were that the defendant must meet that lesser standard of proof and, thus, that he bore some burden of persuasion. Even considering the charge as a whole, as we have done, this language was neither harmless nor invited, but was clearly burden-shifting; and since this case was tried after the date of final decision of *State v. Moore,* supra, it, therefore, constitutes reversible error. Cf. *Davis v. State,* 237 Ga. 279 (1) (227 SE2d 249) (1976); *Cowart v. State,* 237 Ga. 282 (227 SE2d 248) (1976); *Thornton v. State,* 139 Ga. App. 483, 487 (5) (228 SE2d 919) (1976).

2. Perkins next asserts that reversible error occurred when the trial judge charged the entire Code Ann. § 68A-808, including subsection (b) on drag racing, when the affidavit and accusation charged him only with operating an automobile "so as to race and otherwise engage in a contest of speed with another," as prohibited by subsection (a) and defined by subsection (c), thereby causing a fatal variance between the allegata and the probata.

Code Ann. § 68A-808 provides in pertinent part as follows:

"(a) No person shall drive any vehicle on a highway in this State in any race, speed competition or contest, drag race or acceleration contest, test of physical endurance, exhibition of speed or acceleration, or for the purpose of making a speed record, and no person shall in any manner participate in any such race, competition of speed, contest of speed, or test or exhibition of speed.

"(b) Drag race is defined as the operation of two or more vehicles from a point side by side at accelerated speeds in a competitive attempt to outdistance each other, or the operation of one or more vehicles over a common selected course, from the same point to the same point, for the purpose of comparing the relative speeds or power of acceleration of such vehicle or vehicles within a certain distance or time limit.

"(c) Racing is defined as the use of one or more vehicles in an attempt to outgain, outdistance, or prevent another vehicle from passing, to arrive at a given

destination ahead of another vehicle or vehicles, or to test the physical stamina or endurance of drivers over long distance driving routes."

The state insists that subsections (b) and (c) are not mutually exclusive and that, therefore, the rationale of our recent whole court decision in *Walker v. State,* 146 Ga. App. 237, 243 (2) (246 SE2d 206) (1978), is not controlling. In that case the defendant was indicted for committing theft by wrongfully taking property under Criminal Code § 26-1802 (a), but the judge charged the entire section defining the offense of theft by taking stating that it could also be proved by showing unlawful appropriation of property of another of which the defendant had lawful possession. This court reversed, holding that by charging both definitions of the crime, the judge "could have misled the jury into the false belief that they could convict the defendant if *either* of the alternative methods was established by the evidence. This was followed by the specific charge that the jury could convict the defendant if he 'intentionally withheld' the property from the owner. An instruction to a jury can be misleading 'where it gives several definitions of the offense for which accused is being tried . . .' [Cit.] However, it need not be fatal where a court charges the general statute on different modes of commission 'provided a definition is subsequently given applicable to the pleadings and the evidence.' [Cit.] We have no remedial instructions in this instance. And, when it is combined with the subsequent charge, which is based upon a ground not charged in the indictment, it cannot be said as a matter of law that it was not misleading. 'It is reversible error for the court to submit a case to the jury upon a theory entirely different from that claimed in the (indictment) . . .' [Cits.]. . .

"In criminal prosecutions the court's instructions to the jury must be tailored to fit the charge in the indictment and the evidence admitted at trial. [Cits.] This is particularly true when the offense charged may be committed in one of several ways, but the indictment charges one specific method. Accordingly, the instructions were erroneous as a matter of law, and because the defendant was indicted by the grand jury for unlawfully taking the property alleged but instructions

by the court permitted the defendant to be convicted on proof of 'unlawful appropriation' by 'intentionally withholding' the property, there is a fatal variance of proof from the indictment returned by the grand jury. [Cits.]" *Walker v. State,* supra, 243—44.

We conclude that races and contests of speed are likewise separate offenses under Code Ann. § 68A-808 from drag racing. Racing or contest of speed involves one or more vehicles in an attempt to outdistance, prevent from passing or arrive at a given destination first, or to test stamina over a long distance course. Drag racing requires two or more vehicles starting side by side at accelerated speeds to compare speed or power of acceleration within a certain distance or time limit. Under the facts of the present case some facets of both definitions were applicable, but the defendants were charged only with racing under subsection (c). Appellant and his co-defendant were side by side at the red light and left it together when it turned green, but the certain distance and time limit provisions are inapplicable. Racing does not necessarily involve a side by side start, but there was no evidence of the elements of a given destination or long distance driving routes. Thus the evidence did not demand, but would have been sufficient to uphold, a conviction under either subsection. Since Perkins was not charged with drag racing, the charge thereon was harmful and prejudicial as a matter of law. *Walker v. State,* 146 Ga. App. 237, supra; *Reed v. State,* 148 Ga. App. 264, 265 (3) (251 SE2d 148) (1978).

3. Also enumerated as error is the preprinted jury verdict form given to the jury, which was used and disapproved in *Faulkner v. State,* 146 Ga. App. 604, 607 (3 (b)) (247 SE2d 147) (1978). In that case this court agreed with the appellant's contention that the forms used by the State Court of Cobb County which recite, "We, the jury, find the defendant ——————— guilty," were impermissibly suggestive of guilt, and, reversing on other grounds, recommended that the form be changed to read: "We, the jury, find the defendant (guilty) (not guilty)."

We find totally unpersuasive the state's argument that the use of the form in this case was excusable since it was preprinted and "filed" on May 18 and the *Faulkner*

case was decided on June 22, 1978. Regardless of when the verdict form was printed, this case was not tried until October 2, 1978, and it would have been a simple matter for the trial court to prepare or direct the preparation of a short correct form of verdict on a separate piece of paper. In the alternative, the court could have included in its charge proper instructions as to the form of the verdict, thus leaving to the jury the physical preparation thereof. Moreover, our concerns in *Faulkner* with regard to the suggestiveness of guilt are borne out pragmatically in this case since, when the verdict was received, the blank dotted line between "defendant" and "guilty" had been completed by the jury foreman with Perkins' name. Although, as in *Faulkner,* we are reversing here on other grounds, the fact that this disapproved verdict form has been utilized in the same trial court from which the appeal was taken in *Faulkner* induces us to specifically hold the use of such form in this case to be harmful error which constitutes additional reason for reversal.

4. Enumerations of error 4 and 5 deal with admission in evidence of statements of the appellant. During testimony of the state's sole witness, the arresting officer, he stated: "While I was writing the tickets, the subjects was talking in the back seat, and Mr. Allen made a statement as to the fact that . . . " Objection was made in front of the jury that the foundation as to advising the defendants of their Miranda rights had not been laid. The jury was removed and Perkins' attorney requested a hearing on voluntariness. The trial judge then asked several questions of the officer which established that he was sitting in the front seat of his patrol car with the defendants in the back when he overheard their conversation, and that he never gave them any Miranda warnings. The trial judge ruled that the evidence was admissible because discussions heard contemporaneously are admissible under Miranda since they are made voluntarily.

The jury returned and the officer testified that Allen said, " 'I don't know why I did it,' and Mr. Perkins stated, 'Well, I wouldn't have if you hadn't been driving a Camaro,' and Mr. Allen said, 'Well, I won anyway,' and Mr. Perkins said, 'Well, I didn't have mine wound out all

the way,' and Mr. Allen said, 'You might as well have. We got caught.' " While this conversation ensued, the officer was writing out the tickets and filling in general information.

It is clear that the police officer was not interrogating the appellant for the purpose of obtaining evidence to establish his guilt of the crime, and that the statements were, therefore, admissible in the absence of Miranda warnings. *Shy v. State,* 234 Ga. 816, 818 (1) (218 SE2d 599) (1975). Moreover, the hearing conducted by the judge was in effect a Jackson-Denno hearing wherein it was determined that these were spontaneous statements voluntarily made, and unless clearly erroneous such determinations must be accepted by the appellate courts. *Jacobs v. State,* 137 Ga. App. 592 (1) (224 SE2d 462) (1976); *Gibbs v. State,* 235 Ga. 480, 483 (3) (220 SE2d 254) (1975). We find no error on this ground.

5. The trial court likewise did not err in charging on the law of admissions rather than confessions. The two sentences uttered by Perkins, even when considered together with Allen's statements, did not include all the elements of the crime. In an incriminating statement or admission only one or more facts entering into the criminal act is admitted, while in a confession the entire criminal act is confessed. *Johnson v. State,* 204 Ga. 528, 530 (50 SE2d 334) (1948); *Haggard v. State,* 113 Ga. App. 185, 186 (5) (147 SE2d 469) (1966).

6. Written across the top of the preprinted jury verdict form was the notation "Advised of rts. Sept. 6, 1978." We agree with Perkins' contention that this was further impermissibly suggestive of his guilt and damaging to his credibility. The evidence heard by the court but not the jury clearly established that Perkins was not advised of his rights at the time the alleged racing incident occurred, and the unexplained notation that he was so advised some four months later has no place on the form of the verdict. We have held that it was error to use this particular form and we now find that error to be compounded by the inclusion thereon of inadmissible — in fact, false — "back door" evidence.

7. Arguments that the judgment and sentence must be reversed because the accusation is broader than the

affidavit upon which it is based in contravention of *Faulkner v. State,* 146 Ga. App. 604, 605 (2), supra, were not properly raised by motion to quash and cannot now be considered for the first time on appeal. A motion to quash an accusation or indictment because of objection to form is essentially the same as a special demurrer and must be made in writing before the plea. *Thomasson v. State,* 22 Ga. 499 (1) (1857); *McCard v. State,* 54 Ga. App. 339 (1) (187 SE 850) (1936); *Harris v. State,* 69 Ga. App. 872, 873 (27 SE2d 51) (1943); *Dillard v. State,* 147 Ga. App. 587, 588 (2) (249 SE2d 640) (1978). "[F]ailure to demur operates as a waiver of the right to be tried by an indictment [or accusation] perfect in form and substance. [Cit.]" *Megar v. State,* 144 Ga. App. 564, 565 (3) (241 SE2d 447) (1978); see also *State v. Eubanks,* 239 Ga. 483 (238 SE2d 38) (1977).

8. Failure to instruct the jury that the accusation and affidavit were not evidence in the case, while not the better practice, was harmless error. *Faulkner v. State,* 146 Ga. App. 604, 607 (3 (a)), supra.

9. No objections were made to testimony of the arresting officer as to why he did not "throw the book" at the defendant and that in his opinion Perkins' car was exceeding 45 m.p.h., and this witness was also available for cross examination. Objections to evidence cannot be made for the first time in this court. *Clenney v. State,* 229 Ga. 561, 563 (3) (192 SE2d 907) (1972); *Partion v. State,* 148 Ga. App. 185 (2) (251 SE2d 2) (1978).

10. After a review of the entire record, we find that a rational trier of fact could reasonably have found from the evidence adduced at trial proof of guilt of the defendant beyond a reasonable doubt. Jackson v. Virginia, —— U. S. —— (99 SC —, 61 LE2d 560). Since the evidence was sufficient to support the verdict, the "general grounds" are without merit.

*Judgment reversed. Deen, C. J., and Shulman, J., concur.*

SUBMITTED MAY 29, 1979 — DECIDED SEPTEMBER 5, 1979.

*Adele P. Grubbs,* for appellant.

*Herbert Rivers, Solicitor,* for appellee.